UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 23-cr-205 (KMM/LIB) |
| Plaintiff, | |
| v. | ORDER |
| MARK ALLEN ISHAM, | |
| Defendant. | |

This matter is before the Court on Defendant Mark Allen Isham's Objections (ECF No. 39) ("Objections") to Magistrate Judge Leo I. Brisbois's Report and Recommendation ("R&R"), dated December 13, 2023. (ECF No. 38). Judge Brisbois recommends denying Mr. Isham's Motion to Suppress. (ECF No. 25) ("Motion"). For the reasons that follow, the Court overrules Mr. Isham's Objections, adopts the R&R, and denies the Motion.

### I.    Procedural History[1]

In a three-count Indictment, the government charges Mr. Isham with assaulting a spouse or intimate partner (identified hereafter as "C.K.") with a dangerous weapon and with intent to do bodily harm in violation of 18 U.S.C. §§ 113(a)(3), 1151, and 1153(a). (Indictment, ECF No. 1). Mr. Isham filed a motion to suppress statements made to Bois Forte Police Department Officer Danielle Boettcher and Deputy Sean Norland of the

---

[1] Although Mr. Isham included a factual discussion in his Objections, he does not argue that Judge Brisbois made any errors as to the facts in this case. Instead, Mr. Isham contests the legal conclusions Judge Brisbois draws from those facts. Having reviewed the record, the Court adopts the factual summary from the R&R without change.

St. Louis County Sheriff's Department. (ECF No. 25). Magistrate Judge Brisbois held a hearing on the Motion on October 16, 2023, at which Officer Boettcher testified and the parties submitted several exhibits, including bodycam footage. (Motion Hearing, ECF No. 30). Following the hearing, the parties filed supplemental briefing, and Magistrate Judge Brisbois issued his R&R, recommending that Mr. Isham's motion to suppress be denied. (R&R, ECF No. 38). Mr. Isham objects to the R&R. (Objections, ECF No. 39).

Mr. Isham contends that he was already in custody when he made the statements to Officer Boettcher that proceeded his formal arrest and therefore the statements must be suppressed because they were the product of a custodial interrogation that occurred before he was advised of his Constitutional rights. (ECF No. 25). Magistrate Judge Brisbois concluded otherwise, finding that under the factors set forth in *United States v. Griffin*, a reasonable person in Mr. Isham's position would have felt free to end his encounter with Officer Boettcher. 922 F.2d 1343, 1349 (8th Cir. 1990) (R&R at 7–15). Mr. Isham's Objections are directed toward this conclusion.

## II.     Legal Standard

A magistrate judge may conduct evidentiary hearings and submit proposed findings of fact and recommended dispositions on motions to suppress evidence. 28 U.S.C. § 636(b)(1)(B); Fed. R. Crim. P. 59(b)(1). The district court reviews *de novo* any portion of the R&R to which specific objections are made. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3); D. Minn. LR 72.2(b). When conducting such a review after the magistrate judge has held an evidentiary hearing, the district court must review the record, but need not hold a second hearing unless doing so is necessary. *See United*

*States v. $90,000 in U.S. Currency*, Civil No. 07-4744 (JRT/FLN), 2010 WL 1379777, at *13 (D. Minn. Mar. 31, 2010) (quoting *United States v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("[T]o construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts.")). Mr. Isham does not suggest that a second evidentiary hearing is required.

A custodial interrogation is one that involves "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The Eighth Circuit considers six factors when evaluating whether an individual is "in custody" for the purposes of *Miranda*:

> (1) Whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or (6) whether the suspect was placed under arrest at the termination of the questioning.

*United States v. Sanchez*, 676 F.3d 627, 630 (8th Cir. 2012) (quoting *Griffin*, 922 F.2d at 1349). "The first three indicia are mitigating factors which, if present, mitigate against the existence of custody at the time of questioning. Conversely, the last three indicia are aggravating factors which, if present, aggravate the existence of custody." *United States*

3

*v. Axsom*, 289 F.3d 496, 500–01 (8th Cir. 2002). None of the six factors are entirely dispositive; "[t]he analysis depends upon a review of the totality of circumstances, and '[t]he ultimate test is whether a reasonable person in that position would have felt free to end the interview.'" *Sanchez*, 676 F.3d at 630–31 (quoting *United States v. Aldridge*, 664 F.3d 705, 711 (8th Cir. 2011)) (second alteration in *Sanchez*).

Because the ultimate custody determination is based on the totality of the circumstances, "a particularly strong showing with respect to one factor may compensate for a deficiency with respect to other factors." *Griffin*, 922 F.2d at 1349. The key inquiry is "whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (cleaned up). "In answering this question, we look at the totality of circumstances while keeping in mind that the determination is based 'on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'" *United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004) (en banc) (quoting *Stansbury*, 511 U.S. at 322–23). The Court "must examine both the presence and extent of physical and psychological restraints placed upon the person's liberty during the interrogation in light of whether a reasonable person in the suspect's position would have understood his situation to be one of custody." *Axsom*, 289 F.3d at 500 (internal quotation marks omitted).

Courts define interrogation as "express questioning or its functional equivalent," which includes "words or action on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit

4

an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980).

### III. Analysis

The Court agrees with Judge Brisbois that the *Griffin* factors weigh in favor of finding that Mr. Isham was not in custody during the March 24, 2023, encounter with Deputy Norland and Officer Boettcher. With respect to the environment in which the questioning was conducted, the questioning took place in a setting which Mr. Isham had great familiarity—his home. *See, e.g.*, *United States v. Skog*, No. 18-cr-085 (WMW/HB), 2018 WL 4938718, at *8 (D. Minn. Aug. 28, 2018) (finding that law enforcement interviewing the defendant on his front lawn weighed against finding that the interrogation of defendant was custodial in nature), *R&R adopted by,* 2018 WL 4932866 (D. Minn. Oct. 11, 2018); *see also United States v. Rorex*, 737 F.2d 753, 756 (8th Cir. 1984) (holding that the fact that the interview occurred at the defendant's office at his place of business weighed against a finding of custody). Though Deputy Norland and Officer Boettcher never expressly told that Mr. Isham was free to leave or decline questioning, the record demonstrates that he voluntarily agreed to talk to the officers on his property. And when Deputy Norland asked if Isham would be willing to speak with him outside of the home, Isham answered in the affirmative. At no point during the questioning did Mr. Isham tell the officers that he was unwilling to answer questions or ask them to leave his home. Both interviews were brief, and Officer Boettcher testified that Mr. Isham "appear[ed] to be of at least average intelligence." (Tr. 19).

Mr. Isham suggests that the R&R's conclusion that no strong-arm tactics or deceptive stratagems were used is unsupported by the record. But this objection is without merit. Officer Boettcher credibly testified that no such tactics were employed, and Isham makes no allegation that any threats, acts of violence, or promises were made by the officers during the interview. *United States v. Jakel*, No. 15-cr-40 (MJD/HB), 2015 WL 4136412, at *10 (D. Minn. July 8, 2015) (no strong arm or deceptive tactics where officers did not make promises, threats, or confront the suspect with false or misleading statements). Before Mr. Isham was questioned by Officer Boettcher outside of his residence, no formal arrest was made during the questioning, nor were any physical restraints placed on Isham to the degree that could be associated with such an arrest. Mr. Isham remained physically unrestrained throughout the duration of the officer's questioning and was placed under arrest only at the conclusion of the questioning. And while there were two officers present at Mr. Isham's home, the evidence does not support the contention that the questioning on his property was in an atmosphere "dominated" by the police. The officers and Mr. Isham engaged each other without any threats being made, and no weapons were brandished. There exists no testimony in the record that officers engaged in strong arm tactics or employed deceptive stratagems during any portion of the questioning.

Having conducted its *de novo* review of the record, the Court overrules Mr. Isham's objections to the R&R. Judge Brisbois correctly concluded that a reasonable person in Mr. Isham's position would not have understood himself to be in custody

6

during the two brief police interviews with Officer Boettcher and Deputy Norland on March 24, 2023.

## ORDER

Based on the totality of the circumstances, the Court finds that Mr. Isham was not in custody when he made statements to Deputy Norland and Officer Boettcher on March 24, 2023. As such, Mr. Isham's statements were not made during a custodial interrogation within the meaning of *Miranda* and there is no basis for its suppression. For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendant Mark Allen Isham's Objections to the Report and Recommendation (ECF No. 39) are **OVERRULED**;

2. The Magistrate Judge's Report and Recommendation (ECF No. 38) is **ACCEPTED**; and

3. Mr. Isham's Motion to Suppress Statements (ECF No. 25) is **DENIED**.

Date: March 6, 2024           *s/Katherine Menendez*
                              Katherine Menendez
                              United States District Court