# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

            Plaintiff,

v.

  Mark Allen Isham,

           Defendant.

Case No. 23-CR-205 (KMM/LIB)

**CORRECTED[i] ORDER ON GOVERNMENT MOTION IN LIMINE NOS. 1-10 AND DEFENSE MOTION IN LIMINE NOS. 1-6**

The Court held a final pretrial conference in this matter on May 29 and May 30, 2024. During the hearings, the Court issued bench rulings on many of the parties' motions in limine, and took others under advisement. This Order memorializes the Court's previously disclosed decisions and rule on several outstanding matters.[1]

## I. Government Motion in Limine Nos. 1, 3, and 7

In Motion in Limine No. 1, the government asks the Court for an Order precluding the defense from offering or referring to hearsay statements of Mr. Isham or any other witness. In Motion in Limine No. 3, the government asks the Court for an Order precluding the defense from referring to the potential penalty Mr. Isham faces if convicted of the

---

[i] This Order has been corrected at footnote 2 to more accurately characterize the nature of Mr. Isham's objection to the admissibility of a certain item of evidence.

[1] The parties' cross motions regarding the testimony and cross-examination of the government's DNA expert are addressed in a separate order.

offenses alleged. In Motion in Limine No. 7, the government asks the Court for an Order to preclude the defense from arguing or presenting evidence designed to elicit jury nullification.

The Court largely denied these motions during the hearing, or granted them in the abstract. These seemingly prophylactic motions ask the Court for a general order requiring the defense to follow well-established rules of evidence. The Court observed that making such anticipatory motions in the abstract serves little purpose in a case such as this, with seasoned and respected defense counsel, absent some reason to believe that issues of jury nullification, for example, are likely to arise. The Court assumes that both the government and defense will follow the law and the rules of evidence, and these motions are unnecessary to achieve that goal.

## II.   Government Motion in Limine No. 2 and Defense Motion in Limine No. 6

Both parties ask the Court for an Order sequestering potential witnesses during trial. The Court granted both motions and will order the requested sequestration, with the exception of the government's case agent and Mr. Isham's investigator, who may remain in the courtroom or come and go as needed.

## III.   Government Motion in Limine No. 4

In Motion in Limine No. 4, the government moved for a ruling precluding the defense from offering impeachment evidence as to government witnesses pursuant to FRE 404, 608, and 609 absent advance notice. Counsel for Mr. Isham indicated that the defense does not currently intend to introduce such evidence and agreed that notice would be given to the Court and opposing counsel if circumstances change. The Court granted the motion

seeking notice, and ordered that it applied reciprocally to the government, meaning that the government must similarly provide notice in advance of introducing such impeachment evidence as well.

## IV.    Government Motion in Limine No. 5

The government asks the Court for an Order admitting certain items of evidence as self-authenticating pursuant to Fed. R. Evid. 902(11), Fed. R. Evid. 803(6), and Fed. R. Crim. P. 27. Following a review of the records at issue and discussion with counsel, the Court ordered certain redactions, but otherwise admitted exhibits 11 and 47, which comprise medical records. The Court also finds that foundation has been established for the 911 call (exhibit 1) and the Certificate of Indian Blood (exhibit 49).

## V.    Government Motion in Limine No. 6

In Motion in Limine No. 6, the government asks the Court for an Order permitting the Government to introduce as impeachment evidence Mr. Isham's felony conviction in 2013 pursuant to Fed. R. Evid. 609(a). The Court granted the motion.

## VI.    Government Motion in Limine No. 8 and Defense Motion in Limine No. 2

In Motion in Limine No. 8, the government moves to admit an audio recording of the March 24th 911 call that prompted the police response in this case and body-worn camera ("BWC") footage depicting interaction the same day between the police, Mr. Isham, and Ms. Knott as officers responded to that 911 call. Mr. Isham objects to the admission of the BWC footage, and in his Motion in Limine No. 2, Mr. Isham seeks to exclude the 911 call.

For the reasons discussed during the hearing, the Court will admit the 911 call, having concluded that it falls within the present sense impression and excited utterance exceptions to the rule against hearsay. The Court explained that, although the charged assault happened days before the 911 call, Ms. Knott was still at Mr. Isham's residence at the time of the call and stated that she had been unable to leave or call for help. The tone of the call reflects that Ms. Knott was afraid and stressed, was in need of help, and was scared of Mr. Isham learning that she had called 911. These facts line up well with the hearsay exceptions at issue. And the defense pointed to no support for the idea that an excited utterance is only admissible if the excitement or fear that triggers the exception is cause by the charged offense itself.

The Court reaches a different conclusion about the challenged portions of the BWC footage, namely the minutes where the officers are speaking to Ms. Knott alone, after Mr. Isham has been removed from the house.[2] This portion of the video, in which Ms. Knott gives an account of the alleged assault, is hearsay and the government is largely seeking to

---

[2] The Court finds that all parts of the video aside from the interview of Ms. Knott are admissible. In doing so, the Court overrules defense counsel's objections to the introduction of recorded statements made by Mr. Isham pursuant to Fed. R. Evid. 801(d)(2) as violating Mr. Isham's due-process rights. The defense has provided no case law in support of this position, and the Court is aware of no authority for declining to apply this long-established limitation on the general rule against hearsay. The Court understands that defense is making a principled, policy-based argument against the present operation of the Federal Rules of Evidence, and the objection is preserved for appeal. The Court declines to address whether Mr. Isham's statements would be otherwise admissible pursuant to Rule 804(b)(3).

introduce it for the truth of its contents.[3]  Unlike in the 911 call, Ms. Knott's calm demeanor in this portion of the video and the detailed discussion of the assaults are not consistent with the requirements necessary to invoke either the present sense impression or excited utterance exceptions. Though she was clearly scared during the 911 call, she is now much calmer; the fact that she is calm precisely because the police are there does not change that the circumstances have changed.

However, although the testimonial content of the video is hearsay, the interaction between the officers and Ms. Knott is not. Because the fact that Ms. Knott was more forthcoming in describing the alleged assault when not in Mr. Isham's presence is relevant and is not hearsay, the Court will allow the law enforcement witnesses who were at the scene to testify briefly that that Ms. Knott made a more detailed and forthcoming statement to law enforcement about the assault once Mr. Isham was taken into custody.

## VII.   Government Motion in Limine No. 9

In Motion in Limine No. 9, the government submitted a lengthy list of prior convictions, uncharged alleged assaults, and an alleged violation of a protective order—all involving Ms. Knott—that it seeks to introduce via Fed. R. Evid. 404(b) and/or as evidence that is intrinsic to the charged offense in this case. The Court discussed this matter at length

---

[3] The government also suggested it was relevant to explain the next steps in the investigation, including the decision of the officers to take Ms. Knott for medical help. However, the next steps in the investigation and the officers' motivations are likely not relevant to any issue that will be before the jury.

on the record during both parts of the pretrial conference and issued a ruling. That ruling was as follows:

### *FRE 404(b)*

- Events occurring before 2012: These may not come in during the government's case-in-chief. This ruling, as with all pretrial evidentiary rulings, may be revisited to the extent that the defense opens the door to the introduction of such evidence during trial. Specifically, if Mr. Isham minimizes the nature or scope of his history of domestic violence involving Ms. Knott in a way that makes the pre-2012 conduct relevant, the Court will consider a renewed motion to admit some or all of the identified prior acts.

- The 2012 assault leading to Mr. Isham's 2013 plea agreement: In its case in chief, the government may elicit testimony that Mr. Isham pleaded guilty to "federal domestic assault" and was sentenced to prison for two years. The government may also allow its case agent to briefly describe the facts of this assault, limited to their description in the plea agreement. The government may not, in its chase in chief, introduce additional evidence about the assault, including photographs of Ms. Knott or of the scene of the assault. However, such

additional evidence may become admissible should the defense open the door to such information.

- Uncharged alleged assaults of Ms. Knott: Ms. Knott may testify about what she describes as roughly ten assaults[4] that occurred between Mr. Isham's release from prison and the charged offense in this case.

The Court explained on the record that it drew the lines it has between the evidence of prior assaults that come in and the evidence that stays out based on the balancing between probative value and prejudice required by FRE 403. Specifically, the court found that to allow numerous quite old incidents of prior assaults, although they occurred between the same two parties and in circumstances seemingly very similar to the charged assault, would risk being both unduly prejudicial and cumulative.

But for several reasons, the Court found that excluding all evidence, as defense urges, of Mr. Isham's prior admitted or alleged assaultive behavior toward Ms. Knott would artificially elide important facts about their relationship that are relevant to the issues

---

[4] The Court acknowledges the defense's argument that the government's FRE 404(b) disclosure regarding these acts lacks any detail at all. Ms. Knott has not described the locations or even general dates of the alleged assaults, nor the surrounding circumstances of each one. However, the Court observes that the government itself lacks specific detail due to Ms. Knott's own lack of detail in telling her story. And such vague recollections may be quite understandable given Ms. Knott's status as a victim of many years of abuse at the hands of Mr. Isham, and given the significant substance abuse issues that appear to go hand-in-hand with the cycle of violence between the two. The defense cites no case law for the proposition that the victim of an alleged pattern of abuse is required to recall specific details about her abuse before she is permitted to describe it to the jury. But the lack of detail and absence of corroborating evidence may of course be explored during cross-examination. And the government is required to share any additional information it receives about these incidents with the defense promptly.

in this case. First, Ms. Knott is expected to testify that she believes she has "paid for" Mr. Isham's 2013 guilty plea through beatings she has received in the years since he was released from prison, including through the charged assaults. Evidence of his federal conviction is therefore probative as to Mr. Isham's intent and motive to commit the charged offense in this case. *See United States v. Johnson*, 860 F.3d 1133, 1142 (8th Cir. 2017) (upholding the admission of evidence of prior acts that "help explain the history of [defendant and partner's] relationship, from which [defendant's] intent to commit violence upon [his partner] is derived."). Second, these prior acts involve the same victim under very similar circumstances, facts that the Eighth Circuit and other courts have found to support admission of such evidence. *See United States v. Littlewind*, 595 F.3d 876, 881 (8th Cir. 2010) (upholding the admission of prior act evidence under FRE 404(b) in part because "the past acts and the presently charged crimes involved intoxication and physical abuse of the same victim, making them quite similar and relatively more probative"); *see also United States v. Curley*, 639 F.3d 50, 59 (2d Cir. 2011) (permitting a list of prior domestic assaults between the same parties as relevant to establish intent and to demonstrate a pattern of abuse). Third, not only has Mr. Isham's general intent been placed at issue in this case, but his specific intent has as well, because assault with a dangerous weapon requires proof of specific intent to cause bodily harm. Consequently, his specific knowledge of having caused bodily harm to Ms. Knott in the past is relevant to the government's burden of proving intent to cause such harm in this case. *See United States v. Escarsega*, 182 F. App'x 595, 598 (8th Cir. 2006) (upholding admission of "evidence of [defendant's] other assaults [because it] was relevant to show that he intended to cause

bodily harm during the charged offense."). Fourth, Mr. Isham has raised the defenses of self-defense and voluntary intoxication, claims that will be strengthened or undermined by the violent history between him and Ms. Knott. Finally, evidence concerning a violent history between Mr. Isham and Ms. Knott is relevant to the extent that it can explain why Ms. Knott remained in Mr. Isham's house after the first assault, did not call for help for days, and continued to communicate with Mr. Isham even after his Indictment. *See United States v. Plumman*, 409 F.3d 919, 928 (8th Cir. 2005) (evidence of prior assaults was admissible in part because it "provide[d] a reason why [the victim] did not contact law enforcement" immediately after the charged offense). Each of these provide a non-propensity basis for the introduction of some of the FRE 404(b) evidence offered by the government. And the Court will draft a robust jury instruction to lessen the prejudicial impact of these prior acts and admonish the jury to avoid making a prohibited propensity inference as a result of the evidence.

### *Intrinsic Evidence*

The government also seeks to introduce evidence about the week-long period in which Ms. Knott was at Mr. Isham's house prior to the charged assaults, including evidence regarding another alleged assault that happened early in her stay at the home. The Court concluded that this evidence is intrinsic to the charged offense and is therefore admissible because of its close temporal relationship to the charged offense and the fact that the events during this period provide important context. The full picture of Ms. Knott's stay at the home also explains Ms. Knott's delay in contacting law enforcement after the charged offense. *See United States v. Ruiz-Chavez*, 612 F.3d 983 (8th Cir. 2010)

("Evidence of other wrongful conduct is considered intrinsic when it is offered for the purpose of providing the context in which the charged crime occurred. Such evidence is admitted because the other crime evidence completes the story or provides a total picture of the charged crime.") (quoting *United States v. Johnson*, 463 F.3d 803, 808 (8th Cir. 2006)).

**VIII.  Government Motion in Limine No. 10 and Defense Motion in Limine No. 3**

In Motion in Limine No. 10, the government asks the Court for an Order to admit statements made by Ms. Knott to medical providers and a social worker at Essentia-Health. In Motion in Limine No. 3 and during argument, Mr. Isham sought to exclude the documents marked as government exhibit 10 (the social worker's notes), exhibit 12 (a handwritten note from Ms. Knott  for her social worker describing the charged assault), and exhibit 16 (a Minnesota Adult Abuse Reporting Center report prepared by the social worker), as inadmissible hearsay. Mr. Isham also objected to the introduction of certain portions of Ms. Knott's medical records, but not to their admission entirely.

For the reasons stated on the record, the Court determined that the documents marked as government's exhibits 11 and 47 are admissible as medical records pursuant to FRE 803(4), subject to the minor redactions discussed at the hearing. And parallel

testimony regarding Ms. Knott's statements to her medical team is also allowed, subject to the same limitations as the redactions.

However, the Court finds that the documents marked as government's exhibits 10, 12, and 16 contain significant hearsay that does not conform to any hearsay exception.[5] Although the exhibit 10 records themselves might be business records, the portions that restate Ms. Knott's statements are hearsay within hearsay, and the government has not identified a basis for their admission. Unlike Ms. Knott's statements to her medical team, her discussions with the social worker covered her socioeconomic struggles—including that she had nowhere to live and that she had recently been in treatment—rather than her medical conditions. And unlike the medical records, where the inadmissible hearsay portions of the documents were very minor, the inadmissible hearsay in the social work documents is extensive.

The Court notes that, simply because the extensive hearsay in the exhibits themselves is inadmissible, that does not preclude the social worker, Ms. Hegstad, from testifying entirely. The government presumably intends to call her to explain the steps that had to be taken to help Ms. Knott find housing following her release from the hospital, a reality that establishes one of the proffered reasons Ms. Knott returned to Mr. Isham's

---

[5] The government suggested that the MAARC form is admissible in its entirety as a public record under FRE 803(8) and stated that authority supports this. The Court could not find a citation to such authority in the government's submissions and found no federal authority that is useful in this case. The report itself doesn't appear to be a "statement of a public office" but is instead perhaps a "statement to a public office." And it certainly contains hearsay from a non-government employee describing double hearsay from Ms. Smith.

home in the first place. So the witness will be allowed some latitude to describe generally the information Ms. Knott gave about her living situation because it will be admitted for the steps Ms. Hegstad took to find housing rather than for the truth of the matter asserted. But she cannot testify in detail about what Ms. Knott told her about the alleged history of abuse or her past relationship with Mr. Isham.

And the government may seek to revisit this ruling in the event that the documents become admissible under Fed. Rule Evid. 801(d)(1)(B).

## IX.   Defense Motion in Limine No. 1

In Motion in Limine No. 1, Mr. Isham asks the Court for an Order prohibiting the government from referring to Ms. Knott. as a "victim" pursuant to FRE 403.  The Court denied the motion, declining to issue a total prohibition on use of the word "victim" to describe Ms. Knott.  But the Court instructed the parties that Ms. Knott should be referred to by her name as the normal matter of course during trial and should not generally be referred to as a victim by counsel or witnesses during the presentation of evidence. Counsel may of course argue that Mr. Knott or even Mr. Isham were the victim of the assault during arguments to the jury as appropriate.

## X.   Defense Motion in Limine No. 4

In Motion in Limine No. 4, Mr. Isham asks the Court for an Order excluding government exhibit 7 (comprising an FBI DNA report and analyst's CV), as inadmissible hearsay. The Court grants this motion.

The Court agrees with Mr. Isham that the DNA expert report is technically hearsay and is not a business record or otherwise covered by a hearsay exception. *See Melendez-*

*Diaz v. Massachusetts*, 557 U.S. 305, 321–22, 129 S. Ct. 2527, 2538, 174 L. Ed. 2d 314

(2009) ("[Forensic] analysts' certificates—like police reports generated by law

enforcement officials—do not qualify as business or public records" because their

production was "calculated for use essentially in the court, not in [] business.") (internal

quotation and citations omitted). Here, the report at issue is not the raw data, which might

be admissible, or a summary of the raw data, which could come in under FRE 1006, but

is instead a brief written summary of the expert's interpretation of that data. Of course,

Ms. Smith will testify about those conclusions and her recollection may be refreshed with

the report as needed – presumably for these reasons, parties rarely seek to exclude the

reports from evidence.  But the Court grants the motion to exclude the exhibit itself.[6]

Furthermore, despite the fact that CVs and resumes are routinely stipulated as

admissible between parties, numerous Courts have observed that such documents are

hearsay not within any exception of the Rules of Evidence. *See Salgado Colon v. Hosp.*

*Hermanos Melendez, Inc.*, No. 3:19-CV-01797-JAW, 2023 WL 185502 (D.P.R. Jan. 13,

2023) (collecting district court cases). Since Mr. Isham has declined to stipulate to the

admissibility of the analyst's CV, the Court will exclude the document. (This conclusion

applies as well to Scott Miller's CV.) However, the CV and the lab report may be used to

---

[6] The Court joins those courts who have expressed that the hyper-technical application of the hearsay rule in this context makes little sense, as Ms. Smith will testify as to the exact same matter that is contained in her report, and she will be subject to cross-examination. And in another case, involving multiple expert conclusions that are difficult to keep straight, for instance, the Court might allow the exhibit into evidence over an objection to aid the jury in recalling the information at issue.  But here, the report is quite simple and the jury is unlikely to need to review the report to recall its conclusions.

refresh the witness's recollection and may come in if needed in response to cross-examination.

## XI.   Defense Motion in Limine No. 5

In Motion in Limine No. 5, Mr. Isham asked the Court for an Order excluding the testimony of Scott Miller, the government's proffered expert on domestic violence, as inadmissible under *Daubert*. As part of the pretrial conference, the Court conducted a *Daubert* hearing, at which Mr. Miller testified. The Court ultimately granted the motion in part and denied it in part. While the Court finds that Mr. Miller is qualified to testify as an expert on various aspects of domestic violence, the Court excluded testimony concerning the "Power-and-Control Wheel" discussed during the *Daubert* hearing. The Court found that the wheel, which focuses on the behavioral characteristics of male abusers, has limited relevance to explaining the behavior of Ms. Knott (its proffered use in this case). And explaining the conduct of domestic abusers generally does little to prove that Mr. Isham committed the specific assaults charged in this case, while risking being highly prejudicial.

The Court otherwise left the door open for Mr. Miller's testimony if it is relevant following Ms. Knott's testimony.  Specifically, Mr. Miller might be permitted to discuss why victims of domestic violence could be reluctant to get help or testify, why they might recant an earlier accusation, or why they even return to an abusive relationship. But Mr. Miller will only be able to offer such testimony to the extent that Ms. Knott's testimony or other evidence makes it relevant. So the Court declines to issue a final ruling on the admissibility of Mr. Miller's testimony at this time.

**IT IS SO ORDERED**.

Date: June 4, 2024

   *s/Katherine Menendez*
   Katherine Menendez
   United States District Judge